STATE of Tennessee, Appellant,

v.

**Robert HODGES, Appellee.**

Supreme Court of Tennessee,
at Jackson.

Feb. 11, 1985.

Ann Lacy Johns, Asst. Atty. Gen., Nashville, for appellant; William M. Leech, Jr., Atty. Gen. and Reporter, Nashville, of counsel.

Alan Bryant Chambers, Memphis, for appellee.

## OPINION

FONES, Justice.

In January 1983, defendant was charged in a multiple count indictment with tampering with utility metering devices. His lawyer appeared before the trial judge on February 22, 1983, asking for a trial date for the misdemeanors with which defendant was charged. The trial judge informed defendant's counsel on that occasion that he would not "put up with his [defendant's] foolishness" and if "he comes in here dressed like a chicken, I am going to order him out of here under guard."

On June 28, 1983, defendant appeared for trial, with the same counsel, and to say that he was dressed "like a chicken" as the trial judge had anticipated, is a mild description of the outrageous attire in which defendant barely covered himself.[1]

The trial judge first addressed defendant's attorney and asked him to have his client appear in proper clothes. Defendant's attorney responded by informing the court that defendant wished to exercise his right of "freedom of expression." The trial judge then directed his remarks to defendant and ordered him to put on "regular clothes" for the trial scheduled that day.

---

**1.** The order adjudging defendant in contempt contains the following description: "... appeared for trial dressed in a grossly shocking and bizarre attire, consisting of brown and white fur tied around his body at his ankles, loins and head, with a like vest made out of fur, and complete with eye goggles over his eyes. He had colored his face and chest with a very pale green paint or coloring. He had what appeared to be a human skull dangling from his waist and in his hand he carried a stuffed snake."

The record contains three pictures of defendant taken on the day of trial, as ordered by the trial judge. The above description omitted the fact that the so-called vest consisted of two pieces of fur that covered each arm but did not meet in front or in back, leaving defendant's chest and back naked to his waist. His legs were also naked from mid-way between his knee and waist to his ankles. He appeared to be carrying a military gas mask and other unidentifiable ornaments.

The trial judge sought a yes or no answer, but defendant responded with the following assertion:

"This is a spiritual attire and it is my religious belief and I have never worn anything else in court but this when I am on trial."

Whereupon, the trial judge found him to be in contempt of court, revoked his bond, and ordered him committed to jail for ten days or until he agreed to appear for trial in proper clothes.

Defendant's counsel asked the court to allow him to "build a record for appeal" which was denied. Motions were filed the following day, June 29, 1983, on behalf of defendant for a new trial, for reconsideration of the finding of contempt, and for bail pending appeal. At the hearing held on that same day, defense counsel again sought an evidentiary hearing on the issue of defendant's religious belief which was again denied. However, the trial judge fixed bail at one thousand dollars and continued the trial on the meter tampering charges to August 1983.

The Court of Criminal Appeals reversed the contempt adjudication, holding that the trial judge erred in failing to inquire into the

"nature and sincerity of appellant's beliefs, the denomination of his religion, its origin, organization, and the length of time which the appellant has espoused it."

We agree that the trial judge erred in failing to inquire into the religious belief of defendant and in failing to allow a full record to be developed for appeal. However, we think the intermediate court's instructions on remand, quoted above, may be misleading and not entirely in conformity with United States Supreme Court opinions.

A Rhode Island litigant appeared in court wearing a white, knitted skull cap and the trial judge ordered him to remove it or leave the courtroom and refused to consider the litigant's claim that he was a Sunni Muslim, that he was wearing a prayer cap that was a religious symbol of that sect, that indicated that the wearer was in constant prayer. *In re Palmer*, 120 R.I. 250, 386 A.2d 1112 (1978). On appeal, the Supreme Court of Rhode Island accurately summarized the first amendment principle ennunciated by the United States Supreme Court applicable where a religious belief or practice collides with a state law or regulation, as follows:

Despite the exalted status so rightly afforded to religious beliefs and activities that are motivated by and embody those beliefs, the freedom of an individual to practice his religion does not enjoy absolute immunity from infringement by the state. Individuals have been subject to mandatory innoculations despite religious objections to such medical care. *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905).... Thus while the freedom to hold religious beliefs and opinions is absolute, the freedom to act in harmony with these religious beliefs and opinions is not beyond state regulation where such restriction serves the public interest by promoting public health and safety or preserving order. We must then accommodate the right to exercise the religious freedoms safeguarded by the first amendment with the right of the state to regulate these individual freedoms for the sake of societal interests. The problem is one of balance and degree—the courts are called upon to determine when the societal interest becomes so important as to justify an incursion by the state into religious activity that is otherwise protected by the free exercise clause of the first amendment. *Id.* 386 A.2d at 1114–15.

After discussing the United States Supreme Court's application of the balancing test to the facts in *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court of Rhode Island continued as follows:

We believe that because petitioner claimed that his act was protected by the free exercise clause, in order to justifiably curtail the exercise of that alleged right the trial justice should have first allowed petitioner to display the sincerity of his religious belief, and then should have applied the second prong of the *Sherbert* test by balancing petitioner's first amendment right with the interest of the court in maintaining decorum in its proceedings by regulating dress in the courtroom. *Id.* 386 A.2d at 1115.

Thus, the threshold inquiry is whether or not the religious belief or practice asserted qualifies for the protection of the free exercise clause of the first amendment. The record in this case, though meager, clearly indicates that that issue may be decisive, particularly if it proves to be true that defendant is the sole adherent to his asserted religious belief and practice.

In *Braunfeld v. Brown, supra,* the religious practice involved was the Jewish sabbath, in *Sherbert v. Verner, supra,* it was the sabbath of Seventh Day Adventists, and in *Wisconsin v. Yoder, supra,* it was the Amish practices regarding the religious education of their children that conflicted with compulsory public school attendance. Those cases, as well as most of the free exercise cases decided by the United States Supreme Court have involved the religious beliefs and practices of well established religions, well documented beliefs and practices long adhered to, so that the Court has not been called upon to explicitly articulate what constitutes a religious belief that is entitled to First Amendment protection. However, perhaps the pronouncements of the Court in *Wisconsin v. Yoder, supra,* in evaluating the Amish claims that their religious faith and mode of life that conflicted with state regulation was inseparable and interdependent, provide the most relevant guides applicable to the instant case. They are as follows:

Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interest. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, ... their claims would not rest on a religious basis. *Wisconsin v. Yoder,* 406 U.S. at 215, 92 S.Ct. at 1533.

Paraphrasing an additional observation of the Court that involved Thoreau's isolation at Walden Pond, the Court made it clear that a belief which is philosophical and personal rather than religious, does not rise to the demands of the free exercise clause of the First Amendment. 406 U.S. at 215, 92 S.Ct. at 1533.

We think the following from *Thomas v. Review Board of Indiana Employment Security,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), is also relevant to the inquiry into defendant's alleged religious belief:

Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion. *Sherbert v. Verner, supra; Wisconsin v. Yoder,* 406 U.S. 205, 215–216, 92 S.Ct. 1526, 1633, 32 L.Ed.2d 15 (1972). The determination of what is a "religious" belief or practice is more often than not a difficult and delicate task, as the division in the Indiana Supreme Court attests. However, the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.

. . . .

One can, of course, imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause; ... *Thomas v. Review Board of Indiana Employment Security,* 450 U.S. at 714–15, 101 S.Ct. at 1430–31.

This case is clearly illustrative of what Mr. Justice Jackson had in mind when he said, "The price of freedom of religion or of speech or of the press is that we must put up with, and even pay for, a good deal of rubbish." *United States v. Ballard,* 322 U.S. 78, 95, 64 S.Ct. 882, 890 88 L.Ed. 1148 (1944) (Jackson dissenting).

The judgment of the Court of Criminal Appeals is affirmed and this case is remanded to the trial court for further proceedings consistent with this opinion.

COOPER, C.J., and HARBISON and DROWOTA, JJ., concur.

BROCK, J., dissents without filing an opinion.